IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| LEON JOHNSON,           ) | |
|     Plaintiff,       ) | Civil Action No. 7:22-cv-00341 |
| )                     | |
| v.                      ) | |
| )                     | By: Elizabeth K. Dillon |
| J.R. ADAMS, *et al.,*   ) | United States District Judge |
|     Defendants.     ) | |

**MEMORANDUM OPINION**

Plaintiff Leon Johnson, a Virginia inmate proceeding *pro se*, filed a 42 U.S.C. § 1983 complaint containing misjoined claims and defendants, and this court severed her complaint into five separate actions.[1] This case involves her claim that she received three false disciplinary charges in retaliation for filing a complaint under the Prison Rape Elimination Act ("PREA"), 34 U.S.C. §§ 30301–30309, and her claim that her due process rights were violated in the proceedings on those charges. There are eight defendants in this case, all of whom played some role related to the disciplinary charges. Defendant Massingill filed the charges, which were based on an incident involving defendants Duty, Doe, and Massingill. The disciplinary hearing was held before defendant Adams. Johnson alleges that two of the defendants (defendants Stanley and Shirks) failed to properly investigate the disciplinary charges and that two other defendants (White and Manis) improperly upheld the charges on appeal. (*See generally* Compl., Dkt. No. 1.)

The matter is before the court for review pursuant to 28 U.S.C. § 1915A(a). Section 1915A(a) requires the court to conduct an initial review of a "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental

---

[1] According to the amended complaint, Johnson is a transgender woman, and she refers to herself using feminine pronouns. The court does so also.

entity." *See also* 28 U.S.C. § 1915(e)(2) (requiring court, in a case where plaintiff is proceeding *in forma pauperis*, to dismiss the case if it is frivolous or fails to state a claim on which relief may be granted). Pleadings of self-represented litigants are given a liberal construction and held to a less stringent standard than formal pleadings drafted by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). Liberal construction does not mean, however, that the court can ignore a clear failure in pleadings to allege facts setting forth a claim cognizable in a federal district court. *See Weller v. Dep't of Social Servs.*, 901 F.2d 387, 391 (4th Cir. 1990). Applying these standards to Johnson's complaint, the court concludes that it is subject to dismissal pursuant to § 1915A(b)(1). Because it is possible that Johnson may be able to state a claim with additional factual matter with regard to her retaliation claim against Massingill, however, the court will dismiss her complaint without prejudice and will give Johnson an opportunity to file an amended complaint asserting only that claim.

I.  BACKGROUND

Johnson was served three disciplinary charges on June 23, 2021, all of which were based on an incident that occurred the day before, June 22. Specifically, Johnson alleges that on June 22, at approximately 4:30 p.m., Duty told plaintiff that she had a "Phat Ass." Johnson responded by telling Duty that the comment was unprofessional. Shortly thereafter, someone told Johnson to go to the sergeant's office, which she did. (Compl. 3.)

At some point later, when Johnson was present in the office with defendants Duty, Doe, and Massingill, Johnson stated that she was being sexually harassed by Massingill's comments, but had cooperated as ordered. She claims Massingill became "very assaulted [sic]" and argumentative and told the other persons present to "lock up" Johnson. (*Id.*)

The next day, Johnson was served with the disciplinary charges, which accused her of (1) tampering with security material, device or equipment; (2) being in an unauthorized area; and

2

(3) threatening bodily harm to any person verbally, by gesture, or by action. (*Id.* at 6.) Johnson does not provide any additional detail about the nature of the charges or the facts alleged in support of them. She alleges, however, that they were "false." She further alleges that defendant Massingill wrote the false disciplinary report resulting in the charges in retaliation for her "PREA complaint" about Massingill. (*Id.* at 7.)

Johnson further alleges that she was denied due process during the disciplinary hearing held by defendant Adams. In particular, she asserts that she requested witnesses but that none of them were called at the hearing. She also complains that the written disposition by Adams did not explain the full reason for the finding of guilt and that she did not have a counselor to help her, even though she is illiterate. She contends that four other defendants—Stanley, Shirks, White, and Manis—violated her rights either by failing to investigate properly or by upholding her charges on appeal.

The court construes Johnson's complaint as setting forth two claims. The first is a claim that her procedural due process rights were violated during the disciplinary proceedings, and the second is a retaliation claim.

## II. DISCUSSION

**A. Alleged Due Process Violations**

The court turns first to Johnson's claim that her Fourteen Amendment right to due process was violated. "To state a procedural due process violation, a plaintiff must (1) identify a protected liberty or property interest and (2) demonstrate deprivation of that interest without due process of law." *Prieto v. Clarke*, 780 F.3d 245, 248 (4th Cir. 2015). "A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' or it may arise from an expectation or interest created by state laws or policies." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). At least in the context of *liberty* interests—as opposed to property

3

interests—the Supreme Court has squarely held that an inmate establishes a constitutionally protected liberty interest by showing an "atypical and significant" hardship or deprivation in relation to the ordinary incidents of prison life. *See Sandin v. Conner*, 515 U.S. 472, 484 (1995) (holding that disciplinary segregation did not present the type of atypical, significant deprivation that would give rise to a protected liberty interest).

According to the complaint, the punishments imposed on Johnson were a $7 fine, a $10 fine, and 25 days loss of electronics. (Compl. 7.) As several judges of this court have recognized, "small monetary penalties and penalties that do not impose restraint do not impose atypical and significant hardship on a prisoner in relation to the ordinary incidents of prison life and are not constitutionally protected interests under the Due Process Clause." *Roscoe v. Mullins*, No. 7:18CV00132, 2019 WL 4280057, at *3 (W.D. Va. Sept. 10, 2019) (granting summary judgment in defendants' favor as to the due process claim where the only penalty imposed was a $15 penalty), *aff'd on other grounds*, No. 19-7343 (4th Cir. Oct. 28, 2020); *Ferguson v. Messer*, No. 7:15CV00140, 2017 WL 1200915, at *8 (W.D. Va. Mar. 30, 2017) (concluding that three $12 fines did not give rise to a protected property interest); *Bratcher v. Mathena*, No. 7:15CV00500, 2016 WL 4250500, at *1 (W.D. Va. Aug. 10, 2016) (finding $12 fine did not pose an atypical and significant hardship on the plaintiff in comparison to the ordinary incidents of prison life and so did not constitute a loss of a property interest). *But see Bowling v. Clarke*, No. 7:19CV00453, 2021 WL 440794 (W.D. Va. Feb. 8, 2021) (reaffirming earlier ruling that a $15 fine triggered due process protections, but concluding that defendants were entitled to qualified immunity on this issue).

Like the plaintiffs in *Roscoe*, *Ferguson*, and *Bratcher*, Johnson was subjected only to a small fine (a total of $17 on three offenses)—a penalty that is insufficient to give rise to a

protected property interest in the context of prison life under the rationale of *Sandin*.² Likewise, a deprivation of electronics for 25 days is not a sufficient liberty interest to trigger constitutional due process protections. *See Allen v. Mayo*, No. No. 1:20CV780, 2021 WL 1753948, at *5 (E.D. Va. May 4, 2021) ("Neither a loss of telephone privileges nor visitation involve a recognized liberty interest."), *aff'd,* No. 21-6822, 2021 WL 5585751 (4th Cir. Nov. 30, 2021); *Campbell v. Leslie*, No. CV 5:18-00357, 2019 WL 2895295, at *8 (S.D.W. Va. June 10, 2019) (collecting authority for the proposition that a loss of privileges, such as a loss of e-mail, telephone, visitation, commissary, and recreational privileges, do not implicate protected liberty interests pursuant to *Sandin*), *report and recommendation adopted,* No. 5:18-CV-00357, 2019 WL 2881539 (S.D.W. Va. July 3, 2019).

In sum, because the court concludes that neither the fines nor the loss of electronics privileges placed any atypical and significant hardship on Johnson in comparison to the ordinary incidents of prison life, *Sandin*, 515 U.S. at 484, they did not trigger due process protections. Johnson's due process claim therefore fails as a matter of law and will be dismissed. This also requires the dismissal of all defendants except Massingill, Doe, and Duty. The other defendants are only named in conjunction with the disciplinary proceedings.

---

² Although the Fourth Circuit has not yet spoken directly on this issue, some courts have questioned whether *Sandin*'s analysis—requiring that the particular hardship be "atypical and significant" to create a constitutionally protected interest—applies in the context of property deprivations, given that *Sandin* addressed whether a particular deprivation implicated a liberty interest. *See Anderson v. Dillman*, 824 S.E.2d 481, 483–84 (Va. 2019) (noting the disagreement among federal courts on this issue and discussing the different rationales underlying the decisions). Cases from the Sixth and Tenth Circuits have applied *Sandin* in the context of property rights, while the Third and Fifth Circuits have stated *Sandin* does not control in a case involving a property interest. *Anderson*, 824 S.E.2d at 483 & n.4 (collecting authority); *see also Steffey v. Orman*, 461 F.3d 1218, 1222 n.3 (10th Cir. 2006) (identifying the Second and Fifth Circuits as holding that *Sandin* applies only to liberty interests and the Sixth and Ninth Circuits as suggesting, but not holding, the same). The Fourth Circuit indicated, albeit in an unpublished decision, that *Sandin* is applicable to property interests when it applied *Sandin* to conclude that a prisoner "did not have a constitutionally protected liberty or property interest in his prison job." *Backus v. Ward*, 151 F.3d 1028, 1998 WL 372377, at *1 (4th Cir. 1998) (unpublished); *but cf. Burks v. Pate*, 119 F. App'x 447, 450–51 (4th Cir. 2005) (relying on a since-overruled Tenth Circuit decision for proposition that a prisoner has a protected property interest in his prison account funds and concluding that defendants' removal of $249 from plaintiff's account to pay his hospital bill triggered due process protections).

### B. Retaliation Claim

To succeed on her retaliation claim, Johnson must establish that "(1) [she] engaged in protected First Amendment activity, (2) the defendant took some action that adversely affected [her] First Amendment rights, and (3) there was a causal relationship between [her] protected activity and the defendant's conduct." *Martin v. Duffy*, 977 F.3d 294, 299 (4th Cir. 2020) (citing *Martin v. Duffy*, 858 F.3d 239, 249 (4th Cir. 2017)) (alterations omitted). Notably, however, the Fourth Circuit has cautioned that courts must treat an inmate's claim of retaliation by prison officials "with skepticism." *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996). Thus, conclusory allegations of retaliation are insufficient to survive dismissal. *Adams v. Rice*, 40 F.3d 72, 74–75 (4th Cir. 1994) (summarily dismissing retaliation claim as insufficient because it consisted merely of conclusory allegations and no facts to show retaliatory motivation).

As to the first element of the claim, prisoners have a "First Amendment right to be free from retaliation for filing a grievance" or making a report under PREA. *Booker v. S.C. Dep't of Corrs. ("Booker II")*, 855 F.3d 533, 541 (4th Cir. 2017) (grievance); *Roscoe v. Bentley*, No. 7:18-CV-00319, 2021 WL 4267716, at *12 (W.D. Va. Sept. 20, 2021) (PREA report). Although Johnson repeatedly refers to a "PREA complaint," she does not set forth any facts about making any formal PREA complaint or when she did so. Instead, she describes her verbal complaint about Massingill's alleged verbal harassment while in the sergeant's office, which is what Johnson appears to be calling her "PREA complaint." Such a verbal complaint, though, would constitute protected activity under the First Amendment. *Booker II*, 855 F.3d at 542 (noting that *Daye v. Rubenstein*, 417 F. App'x 317, 319 (4th Cir. 2011), "misconstrued *Adams* as precluding an inmate from bringing a First Amendment claim alleging retaliation in response to a prisoner's verbal complaints to prison officials"); *see also Patton v. Kimble*, 717 F. App'x 271, 272 (4th Cir. 2018) (holding that an inmate's verbal complaint to a correctional officer's

6

supervisor was protected First Amendment activity). Thus, the first element of Johnson's retaliation claim is satisfied.

As to the second element, "a plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights." *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 500 (4th Cir. 2005). Turning first to defendants Duty and Doe, Johnson does allege that they were involved in the underlying incident, which is only vaguely described, but Johnson does not allege that either one of them played any role in bringing or prosecuting the disciplinary charges against her. Accordingly, she has not alleged that either of them took any adverse action against her. The retaliation claims against them both will be dismissed.

That leaves only Massingill, who Johnson alleges brought the disciplinary charges and wrote the "false disciplinary report." The Fourth Circuit has stated that the filing of a false disciplinary charge can be a sufficiently adverse action to satisfy the second element of a retaliation claim. *See Booker v. S.C. Dep't of Corrections*, 583 F. App'x 43, 44 (4th Cir. 2014) ("*Booker I*") (concluding that the filing of a false disciplinary charge unsupported by any evidence warranting that charge "would likely deter prisoners of ordinary firmness from exercising their First Amendment rights"). Johnson has alleged the charges against her were false, and so, for purposes of this opinion, the court will assume that she has adequately pled the second element of her claim as to Massingill.

The third element requires Johnson to show a causal causation between the First Amendment activity and the alleged adverse action. In the prison context, the Fourth Circuit has directed district courts to apply the "same-decision test" of *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274 (1977), in determining the causation element. *Martin*, 977 F.3d at 299.

7

Under that test, a plaintiff must first put forth evidence to show that her "protected conduct was a substantial or motivating factor in a prison guard's decision to take adverse action." *Id.* at 300.  At a minimum, she must allege facts showing both that the defendant was aware the plaintiff had engaged in protected activity and "some degree of temporal proximity to suggest a causal connection." *Constantine*, 411 F.3d at 501.  If plaintiff shows that the protected conduct motivated the defendant or was a substantial factor in the defendant's decision, then the burden shifts to the defendant to prove a permissible basis for taking the adverse action. *Martin II*, 977 F.3d at 299.  "'If the defendant fails to carry that burden, the inference is that 'but for' causation . . . has been shown: the plaintiff would not have been harmed had his rights not been violated by the defendant.'" *Id.* at 299 (quoting *Greene v. Doruff*, 660 F.3d 975, 979 (7th Cir. 2011)).

Here, Johnson offers scant factual allegations as to the retaliation claim.  She summarily alleges that, "[i]n retaliation I was sexual[ly] harass[ed] even more and threaten[ed] by Massingill." (Compl. 4–5.)  And she states that "Defendant Massingill violated [her] constitutional rights by writing false disciplinary report in retaliation." (*Id.* at 7.)  Other than these conclusory statements, Johnson offers no *facts* suggesting that the disciplinary charges were filed against her because she reported sexual comments to Massingill.  Although the charges were served the day after Johnson complained in the sergeant's office, timing alone is often "too slender a reed on which to rest" a retaliation claim. *Wagner v. Wheeler*, 13 F.3d 86, 91 (4th Cir. 1993).  Moreover—and importantly here—the fact that Johnson already had been sent to the sergeant's office *before* making the verbal report is a strong indicator that Massingill or others believed she had engaged in misconduct even before she says she complained.  That fact strongly undercuts any plausible causal connection between her complaint and the charges.

Because Johnson has not presented factual matter to allege that her protected activity was

8

a "substantial or motivating" factor in Massingill's decision to bring disciplinary charges, the retaliation claim against Massingill will be dismissed.

### III.  CONCLUSION

Johnson's complaint fails to state a constitutional deprivation actionable under § 1983, and it will be dismissed, pursuant to 28 U.S.C. § 1915A(b)(1), for failing to state a claim upon which relief may be granted. The court will dismiss Johnson's complaint with prejudice as to the due process claim and the retaliation claim as to all defendants except Massingill. It will dismiss without prejudice as to the retaliation claim against Massingill only. An appropriate order will be entered.

Entered: July 21, 2022.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge