IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| LEON JOHNSON, ) | |
|    Plaintiff, ) | Civil Action No. 7:22-cv-00341 |
| ) | |
| v. ) | |
| ) | By:  Elizabeth K. Dillon |
| F. DUTY, *et al.*, ) |      United States District Judge |
|    Defendants. ) | |

**MEMORANDUM OPINION**

Plaintiff Leon Johnson,[1] a Virginia inmate proceeding *pro se*, brought a lawsuit that was severed into several actions, including this one, which involves plaintiff's claim that defendants violated Johnson's First Amendment right to be free from retaliation.  (Dkt. No. 1-1; Dkt. No. 9 at 1; Am. Compl., Dkt. No. 11.)[2]  Before the court is a motion for summary judgment filed by the two defendants, F. Duty and J.R. Massengill.  (Dkt. No. 24.)  Also before the court is Johnson's motion to amend the judgment (Dkt. No. 27) that appears to be a brief in opposition to the summary judgment motion, so the court will construe it as such.  In addition, Johnson has filed a motion for appointment of counsel (Dkt. No. 28) and a request for production of documents (Dkt. No. 29), which the court will address herein.

For the reasons stated below, defendants' motion for summary judgment will be granted, Johnson's motion for appointment of counsel will be denied, and Johnson's request for production will be denied.

---

[1] Johnson is transgender and refers to herself using feminine pronouns.  The court does so also.

[2] The court's December 9, 2022 order directed that plaintiff file an amended complaint with the single claim that defendants "violated Plaintiff's First Amendment right to be free from retaliation in relation to the filing of three disciplinary charges."  (Dkt. No. 9 at 1.)

I.  BACKGROUND

At all times relevant to this lawsuit, Johnson was housed at Red Onion State Prison (ROSP).  During the relevant time, defendants were both corrections officials employed by the Virginia Department of Corrections (VDOC) at ROSP.

Per her amended complaint, Johnson alleges that Duty and Massengill "verbal sexual harass me and by me reporting it under 34 U.S.C. 30301 . . . I was retaliated against by Duty and Massengill based on filing of three disciplinary charges."  (Am. Compl. at 2.)  Duty and Massengill learned that Johnson reported a Prison Rape Elimination Act (PREA) grievance, and as a result, Johnson alleges that she was given three false charges and placed into the Restorative Housing Unit (RHU) to keep her from grieving her rights.  (*Id.*)

**Exhaustion of Administrative Remedies**

In support of their motion for summary judgment, defendants submit the affidavit of C. Meade, a Regional Ombudsman for the Western Region with the VDOC.  Ms. Meade was the Grievance Coordinator at ROSP in 2021 during the timeframe relevant to plaintiff's allegations.  (Meade Aff. ¶ 12, Dkt. No. 25-1.)  Defendants' sole argument in favor of summary judgment is that Johnson failed to exhaust her administrative remedies under the VDOC's grievance procedure prior to filing this lawsuit.[3]

On June 22, 2021, Massengill wrote the following disciplinary charges against Johnson: ROSP-2021-1210: Tampering with Security Materials, Devices, or Equipment (Offense Code 120B); ROSP-2021-1211: Being in an unauthorized area (Offense Code 229); and ROSP-2021-

---

[3] Defendants reserve the right to file a motion for summary judgment on the merits if the court rules against them in this motion.

1212: Threatening bodily harm (Offense Code 212). Plaintiff was found guilty of the first charge on August 6 and guilty of the last two charges on July 16. (*See* Answer ¶¶ 3–4, Dkt. No. 25.)

VDOC Operating Procedure (OP) 866.1, Offender Grievance Procedure, is a mechanism for inmates to resolve complaints and allows corrections officials a means to evaluate potential problems and, if necessary, correct said problems in a timely manner. (Meade Aff. ¶ 4.) Disciplinary actions are not grievable but claims of retaliation pertaining to disciplinary charges are grievable and can be pursued under OP 866.1. (Meade Aff. ¶ 14.)

Grievances must be submitted within thirty calendar days from the date of the incident. (Meade Aff. ¶ 6.) Before submitting a regular grievance, an inmate must demonstrate that she made a good faith effort to informally resolve the complaint, which can be done by submitting a written/informal complaint. (*Id.*) OP 866.1 states that the "exhaustion requirement is met only when a *Regular Grievance* has been accepted into the grievance process and appealed, without satisfactory resolution of the issue." (Meade Aff. ¶ 4, Encl. § A (V)(B).)

Based on Meade's review of Johnson's grievance file, the file does not document that Johnson filed any informal or written complaints or regular grievances complaining that defendants initiated disciplinary charges against her in retaliation for complaining that defendants verbally sexually harassed her. (Meade Aff. ¶ 13.) The file also contains no documentation that Johnson filed any informal complaints/written complaints or regular grievances that her placement in RHU was retaliatory. (*Id.* ¶ 16.) Johnson's ROSP grievance file contains no documentation that she filed a written complaint/informal complaint, followed by a regular grievance accepted at intake and appealed through the highest level of appeal regarding her claim. (*Id.* ¶ 17.)

Grievance forms are available in the housing units at ROSP, including the Restorative Housing Unit, so Johnson would have had access to such forms during the relevant time period. (*Id.* ¶ 18.) Inmates may also ask housing unit staff members for forms at any time and, if any inmate had complained to Meade that the inmate needed forms, Meade would have reached out to the building staff to provide the requested forms. (*Id.*) Johnson's grievance file reflects that in 2021 she filed 18 informal/written complaints and had seven regular grievances that were accepted during the intake process and assigned grievance log numbers. (*Id.* ¶ 19.)

## II.  ANALYSIS

### A.  Motion to Appoint Counsel

While there is no constitutional right to appointed counsel in a civil case, the court may exercise its discretion to appoint counsel for an indigent in a civil action, 28 U.S.C. § 1915(d); *see Smith v. Blackledge*, 451 F.2d 1201, 1203 (4th Cir. 1971). The Fourth Circuit has stated that counsel should be appointed only in exceptional circumstances, which "will turn on the quality of two basic factors—the type and complexity of the case, and the abilities of the individuals bringing it." *Brock v. City of Richmond*, 983 F.2d 1055 (4th Cir. 1993). The issues presented by this case and by this motion are not complex. Also, the court notes that Johnson has demonstrated the ability to adequately litigate this and other cases by bringing this action on her own behalf and by filing numerous motions and responses to defendants' filings. Accordingly, Johnson's motion to appoint counsel will be denied.

### B.  Request for Production

Along with her response to the motion for summary judgment, Dkt. No. 27, Johnson filed a request for production of documents pursuant to Rule 34 of the Federal Rules of Civil Procedure. Johnson requests that Massengill produce (1) the complete operating procedure for

4

offender discipline, (2) all written statements identifiable as reports about the June 22, 2021[4] incident, (3) medical or mental health service records from the time of her incarceration at ROSP; and (4) any and all rules, regulations, and policies of the VDOC about discipline or charges.  (Dkt. No. 29.)  To the extent that Johnson's filing can be construed as a motion to compel Massengill to provide the listed information, Johnson's motion will be denied as moot because the requested information would not be relevant to the issues raised by the pending summary judgment motion.

**C.  Summary Judgment Standard**

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  The party seeking summary judgment bears the initial burden of showing the absence of any genuine issues of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  If the moving party meets this burden, the nonmoving party "may not rest upon the mere allegations or denials of its pleading, but must set forth specific facts showing there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Additionally, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Id.* at 586.  That is, once the movant has met its burden to show absence of material fact, the

---

[4] Johnson uses the date June 22, 2022, but the court presumes that this is a mistake on her part.

party opposing summary judgment must then come forward with affidavits or other evidence demonstrating there is indeed a genuine issue for trial. Fed. R. Civ. P. 56(c); *Celotex Corp.*, 477 U.S. at 323–25. Although all justifiable inferences are to be drawn in favor of the non-movant, the non-moving party "cannot create a genuine issue of material fact through mere speculation of the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).

The court is charged with liberally construing complaints filed by *pro se* litigants, to allow them to fully develop potentially meritorious cases. *See Cruz v. Beto*, 405 U.S. 319 (1972); *Haines v. Kerner*, 404 U.S. 519 (1972). At the summary judgment stage, however, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. *See Chisolm v. Moultrie*, C/A No. 4:21-03506-BHH-TER, 2023 WL 3631798, at *1 (D.S.C. May 2, 2023). A court cannot assume the existence of a genuine issue of material fact where none exists. Fed. R. Civ. P. 56(c).

**D. Exhaustion under the Prison Litigation Reform Act (PLRA)**

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[E]xhaustion is mandatory under the PLRA and . . . unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). A prisoner must exhaust all available administrative remedies, whether or not they meet federal standards or are plain, speedy, or effective, and even if exhaustion would be futile because those remedies would not provide the relief the inmate seeks. *Davis v. Stanford*, 382 F. Supp. 2d 814, 818 (E.D. Va. 2005).

6

Ordinarily, an inmate must follow the required procedural steps to exhaust her administrative remedies.  *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008).  An inmate's failure to follow the required procedures of the prison administrative remedy process, including time limits, or to exhaust all levels of administrative review is not "proper exhaustion" and will bar the claim.  *Woodford v. Ngo*, 548 U.S. 81, 90 (2006).  Exhaustion serves "two main purposes."  *Woodford*, 548 U.S. at 89.  First, the exhaustion requirement "protects administrative agency authority" by allowing the agency the "opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court."  *Id.*  Second, "exhaustion promotes efficiency" because "[c]laims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court."  *Id.*  But the court is "obligated to ensure that any defects in administrative exhaustion were not procured from the action or inaction of prison officials."  *Shipp v. Punturi*, Civil Action No. 7:21cv00414, 2023 WL 7125259, at *3 (W.D. Va. Oct. 30, 2023) (citing *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007)).  Accordingly, an inmate need only exhaust "available" remedies.  § 1997e(a).  An administrative remedy is not available "if a prisoner, through no fault of [her] own, was prevented from availing himself of it."  *Moore*, 517 F.3d at 725.

As detailed herein, Johnson did not file any grievances pertaining to or alleging that her RHU placement was retaliatory prior to filing this lawsuit.  This is demonstrated by the evidence providing that Meade conducted a review of Johnson's grievance file.  In response, Johnson largely argues that she was denied due process in the underlying disciplinary proceeding that resulted in her RHU placement.  (*See* Dkt. No. 27.)  Johnson provides no evidence or argument that would demonstrate or suggest that she filed any grievances or complaints pursuant to the

7

requirements of OP 866.1 prior to filing this lawsuit. Johnson also does not complain or demonstrate that the relevant administrative remedies were unavailable to her or that she was somehow prevented from pursuing those remedies. To the contrary, the evidence provided by defendants demonstrates that grievance forms are available in all housing units at ROSP, including Restorative Housing. Therefore, Johnson's suit is barred by the PLRA, and defendants are entitled to summary judgment. *See, e.g.*, *Tracey v. Kirkland Corr. Inst.*, Civil Action No. 1:12-cv-01614-JMC, 2013 WL 3049410, at *4 (D.S.C. June 17, 2013) (finding that defendant is entitled to summary judgment on exhaustion issue where "a review of Plaintiff's grievance history reveals no grievances filed before the initiation of this litigation" and plaintiff's "vague and general allegations" that grievance forms were "not readily available" are "insufficient to overcome the undisputed evidence that he has failed to show any concrete attempts to exhaust his administrative remedies on any of his claims").

### III.  CONCLUSION

Based on the foregoing, the court will issue an appropriate order denying Johnson's request for production, denying Johnson's motion to appoint counsel, granting defendants' motion for summary judgment, and entering final judgment in this matter.

Entered: February 5, 2024.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge